UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EUGENE H. MCCARRON,          )
       Plaintiff,          )
               )
v.          )          CIVIL ACTION
               )          NO. 07-10786-RGS
J.P. MORGAN SECURITIES, INC. and          )
JP MORGAN CHASE & CO.,          )
       Defendants.          )
               )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL DEFENDANTS TO PRODUCE DISCOVERY REGARDING (A) INFORMATION SHARED WITH THE SEC AND/OR WITH THE NASD AND (B) DEFENDANTS' INTERNAL INVESTIGATIONS

Pursuant to Fed. R. Civ. P. 37(a)(1) and 37(a)(3)(B)(ii)-(iv), Plaintiff, Eugene H. McCarron ("McCarron"), submits this Memorandum in support of his motion to compel Defendants, J.P. Morgan Securities, Inc. ("JPMSI") and JP Morgan Chase & Co. ("JPMorgan Chase") (collectively referred to as "Defendants"), to produce documents, information and testimony regarding information shared with the Securities and Exchange Commission ("SEC") and/or with National Association of Securities Dealers ("NASD") and its successor entity, the Financial Industry Regulatory Authority, Inc. ("FINRA") (collectively referred to with the NASD as the "NASD"), as well as that information which constitutes, or is related to, Defendants' internal investigations, allegedly conducted contemporaneously with Defendants' provision of information to the SEC and/or the NASD (the "Motion"). Such documents, information and testimony are responsive to McCarron's reasonable discovery requests. Either such discovery is not privileged or the privilege has been waived, and such discovery must therefore be produced.[1]

---

[1] In the alternative, Plaintiff requests that this Court conduct an *in camera* review of all materials alleged by Defendants to be protected by the attorney-client and/or attorney work-product privilege.

<u>INTRODUCTION AND STATEMENT OF RELEVANT FACTS</u>

This action arises out of McCarron's claims for employment discrimination, unlawful retaliation and defamation. McCarron, an institutional equities salesperson, had a successful career at JPMSI from his hire in 1999 until he was diagnosed with life-threatening cancer in late March/early April 2005. After becoming disabled by cancer, and/or being perceived as such, McCarron was unfairly (and illegally): (a) scapegoated for Defendants' 2003 acquiescence with a request from a Fidelity employee for Super Bowl tickets, acquiescence directed by then Vice-President McCarron's supervisor; (b) scapegoated for Defendants' gift-giving and entertainment practices, practices for which he did not have supervisory responsibility; and (c) subjected to disparately harsh discipline compared to that meted out to others.

Specifically, during 2004, the SEC was investigating Fidelity Management & Research Company and FMR Co., Inc. (collectively referred to as "Fidelity") regarding allegations that certain Fidelity employees had, in essence, put Fidelity's integrity up for sale by asking favors from companies with which Fidelity did business. One of those firms was JPMSI and, in 2004, the SEC issued a subpoena to JPMSI, as well as other firms, regarding its investigation of what became known as Fidelity's "pay to play" practices. In recognition of the industry-wide nature of such "pay to play" practices, the NASD conducted its own inquiry (the "Sweeping Inquiry"), and requested that its member firms, including JPMSI, conduct firm-wide self-assessments of their gift-giving and entertainment practices.

In 2005, Defendants did their self-assessment, i.e., an internal investigation (the "Self-Assessment"), and voluntarily shared information from that with both the SEC (the "Subpoena Investigation") and the NASD. During the course of 2005, as McCarron's medical condition became known, Defendants' position regarding McCarron's gift and entertainment practices changed until he became the scapegoat and his removal was touted by Defendants to the SEC and NASD as a "remedial step." Defendants have put these matters at issue by offering the findings of the investigations as cause for

McCarron's termination at the Massachusetts Commission Against Discrimination ("MCAD"),[2] but now

refuse to produce related discovery, on grounds that such discovery is protected by attorney-client

privilege and the work product doctrine.

<p align="center">EFFORTS TO RESOLVE DISCOVERY DISPUTES</p>

On November 30, 2007, McCarron served his First Set of Interrogatories and First Request for

Production of Documents and subsequently granted Defendants two thirty-day extensions to respond.  On

February 20, 2008, McCarron served his Notice of Taking Deposition of Defendant, JPMSI, Pursuant to

Fed. R. Civ. P. 30(b)(6) and attached a Schedule of Topics thereto ("JPMSI Topics").  On March 5, 2008,

Defendants responded to McCarron's First Request for Production of Documents but produced no

documents, and served its Answers to Plaintiff's First Set of Interrogatories.  By letter dated March 6,

2008, JPMSI outlined its objections to the JPMSI Topics.  On March 14, 2008, the parties conferred,

pursuant to Mass. Dist. Ct. R. 37.1, to narrow and resolve areas of dispute.  McCarron memorialized this

conference by letter dated March 18, 2008, confirming JPMSI Topics for which Defendants agreed to

designate a witness and other Topics for which Defendants maintained their objections.  By letter dated

March 24, 2008, McCarron identified his issues with JPMSI's Answers to Interrogatories, which consisted

largely of boilerplate objections, and requested that a privilege log be produced with respect to

Defendants' numerous privilege objections (as to Plaintiff's First Request for Production of Documents).

On April 2, 2008, the parties conferred by teleconference to attempt narrow issues in dispute.

During that call, Defendants agreed to designate a deponent to testify about certain JPMSI Topics.  On

April 11, 2008, McCarron served his Amended Notice of Taking Deposition of JPMSI, Pursuant to Fed.

R. Civ. P. 30(b)(6) and Amended Schedule of Topics ("JPMSI Amended Topics") and Notice of Taking

---

[2] For example, as further described below, Request for Production No. 46 requests documents related to a letter dated July 7, 2006 from Todd Gutfleisch, Defendants' in-house counsel, to Marzella B. Hightower at the MCAD ("Hightower Letter"), which makes misrepresentative claims regarding the investigation that allegedly led to McCarron's termination.  Defendants' Position Statement filed with the MCAD ("Position Statement"), which relates to document requests Nos. 43 and 44, makes similarly dubious claims regarding Defendants' alleged investigation (see pp. 2-3 of Position Statement) and the results of that investigation.  Plaintiff can only refute the veracity of these claims, which constitute Defendants' entire defense, if this Court compels discovery.  True and accurate copies of the Hightower Letter and the Position Statement are attached hereto and incorporated herein as Exhibits A and B, respectively.

Deposition of Defendant, JP Morgan Chase, Pursuant to Fed. R. Civ. P. 30(b)(6) and Schedule of Topics ("JP Morgan Topics"). On April 16, 2008, the parties again conferred by teleconference. On April 17, 2008, McCarron served his Second Amended Notice of Taking Deposition of JPMSI Pursuant to Fed. R. Civ. P. 30(b)(6) with Second Amended Schedule of Topics ("JPMSI Second Amended Topics")[3] and Amended Notice of Taking Deposition of JP Morgan Chase Pursuant to Fed. R. Civ. P. 30(b)(6) with Amended Schedule of Topics ("JP Morgan Amended Topics").[4] By letter dated April 22, 2008, Defendants objected in writing on various bases to eight of nine additional topics contained in the JPMSI Second Amended Topics, as well as every Topic contained on the JP Morgan Amended Topics. On April 23, 2008, Defendants delivered a limited privilege log.[5] On April 28, 2008, the parties again conferred by teleconference regarding Defendants' objections to the Interrogatories and to the JPMSI Second Amended Topics and JP Morgan Amended Topics. On May 9, 2008, JPMSI served its Supplemental Answers to Plaintiff's First Set of Interrogatories, clarifying its privilege objections (responsive to McCarron's March 24 letter) and supplementing, in a very limited way, its prior Answers. The specific document requests, interrogatories and deposition topics to which Defendants either refuse to respond or refuse to designate a witness to testify, based on an assertion of privilege, are set forth below.[6]

<div align="center">ARGUMENT</div>

I.    **DEFENDANTS CARRY THE BURDEN OF PROVING THAT THE WITHHELD DISCOVERY IS PROTECTED BY PRIVILEGE.**

It is Defendants' burden to prove that the attorney-client privilege and/or the work-product doctrine applies. *See Cataldo v. National Grid USA*, No. 20065120, 2008 WL 496718, at *3 (Mass.

---

[3] The JPMSI Second Amended Topics included all of the Topics set forth in the JPMSI Amended Topics, as well as one new Topic.
[4] The JP Morgan Amended Topics contain one further Topic beyond those set forth in the JP Morgan Topics.
[5] The privilege log was accompanied by a cover letter indicating that Defendants would further supplement the document production, privilege log, and answers to interrogatories on some unspecified future date. Despite having produced further documents since April 23, no supplemental privilege log has been produced to date, making it impossible for Plaintiff to address Defendants' claims of privilege as to specific documents.
[6] Consistent with the requirements of Mass. Dist. Ct. R. 37.1(B)(4), Defendants' specific responses to such discovery requests are detailed as well.

Super. February 15, 2008).[7]  In addition, the work-product doctrine applies only to "documents and tangible things that are prepared in anticipation of litigation or for trial…." Fed. R. Civ. P. 26(b)(3)(A). As discussed below, the Defendants have failed to carry their burden.

**II.    DEFENDANTS MUST BE COMPELLED TO PRODUCE DISCOVERY REGARDING INFORMATION SHARED WITH THE SEC AND/OR WITH THE NASD BECAUSE SUCH DISCOVERY IS EITHER NOT PROTECTED BY PRIVILEGE OR THE PROTECTION HAS BEEN WAIVED.**

Whatever protection the Court may find the withheld discovery had, that protection was waived once the withheld discovery was shared with the SEC and/or NASD.  When information is disclosed to a party outside a small "magic circle" of persons necessary to facilitate consultation between lawyer and client, the attorney-client privilege is waived as to such information, *see United States v. Massachusetts Institute of Technology*, 129 F. 3d 681, 684 (1st Cir. 1997); and if such disclosure is made to a potential adversary, such as the SEC or the NASD, work product protection is lost as well.[8]  *Id.* at 687.  *See also, e.g., In re Lupron Marketing and Sales Practices Litigation*, 313 F. Supp.2d 8, 12 (D. Mass. 2004); *Federal Deposit Insurance Corporation v. R.W. Beck, Inc.*, No. Civ.A.01-CV-11982RGS, 2004 WL 1474579, at *2 (D. Mass. July 1, 2004);[9]  *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993) (finding that a corporation's voluntary cooperation with an SEC investigation resulted in a waiver of work product protection with respect to private litigants)[10]; *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1427 (3d Cir. 1991) (same as to both attorney-client privilege and work product protection).[11]

---

[7] A copy of this decision is attached hereto as Exhibit C.
[8] If Defendants argue that the SEC and/or NASD were not potential adversaries, then the work-product doctrine does not apply as the documents or tangible things alleged to be protected by it were not prepared in "anticipation of litigation."
[9] A copy of this decision is attached hereto as Exhibit D.
[10] Moreover, a request to the SEC and/or NASD to maintain the confidentiality of disclosed materials does not prevent a waiver. *See, e.g., In re Lupron Marketing and Sales Practices Litigation*, 313 F. Supp.2d at 11.
[11] Both the SEC and NASD potentially could have taken adverse actions against Defendants: litigation by the SEC and/or disciplinary action by the NASD. Accordingly, as in *Westinghouse*, disclosure of work-product by Defendants to the SEC and/or NASD results in a waiver of the work-product doctrine as to "all other adversaries." *Id.* at 1429. In *Westinghouse*, the Court of Appeals noted that "Westinghouse's disclosures to the SEC and to the DOJ waived the protection of the work-product doctrine because they were not made to further the goal underlying the doctrine. When a party discloses protected materials to a government agency investigating allegations against it, it uses those materials to forestall prosecution (if the

III.  **DEFENDANTS MUST BE COMPELLED TO PRODUCE WITHHELD DISCOVERY WHICH CONSTITUTES, OR IS RELATED TO, DEFENDANTS' INTERNAL INQUIRY.**

A.  By Putting Their Internal Investigation At Issue, Defendants Have Waived Any Protection Afforded the Withheld Discovery.

"It is settled law that by placing privileged communications or attorney work product 'at issue' in civil litigation, a party waives an applicable claim of privilege where nondisclosure would cause manifest unfairness to the opposing party." *Federal Deposit Insurance Corporation*, 2004 WL 1474579, at *1. Such is the case when an employer relies for its defense on the results of an internal investigation but resists full discovery regarding that investigation. For example, Defendants conducted annual compliance audits of their entertainment and gift-giving practices, which McCarron never failed to pass, and which evidence the pretext of Defendants' reason for terminating McCarron. In response to McCarron's requests for documents concerning annual compliance audits (*see* Document Request No. 21), however, Defendants have unilaterally limited the scope of the request and substantially redacted their production, claiming privilege as to documents – and words and phrases within certain documents – as they see fit.[12]

One court has described this unfairness as follows:

"One cannot assert the attorney-client privilege to keep an [employee] from discovering facts about an investigation when the investigation is being used at trial as a defense to defeat the [employee's] allegations. This would be a classic case of using the attorney-client privilege not as a shield but as sword. The [employer] wishes to have its cake and eat it too."

*Futz v. Federal Sign*, No. 94 C 1931, 1995 WL 76874, at *2-3 (N.D. Ill. Feb. 17, 1995) (allowing

---

charges are unfounded) or to obtain lenient treatment (in the case of well-founded allegations). These objectives, however rational, are foreign to the objectives underlying the work-product doctrine." *Id.* The same rationale applies here.
[12] While Defendants have produced certain documents and information relating to their so-called firm-wide internal investigation of alleged gift-giving and entertainment practices, they have largely failed and refused to produce discovery concerning employees other than the Plaintiff, alleging that such discovery is privileged, and/or that it implicates the privacy rights of such other employees. As has been noted in other pleadings filed by Plaintiff contemporaneously with this Memorandum, any information or documents produced by Defendants responsive to Plaintiff's discovery requests may be designated "Confidential" pursuant to a comprehensive Stipulation and Order of Confidentiality entered into by the parties in this action and entered as an Order of this Court on January 15, 2008 ("Confidentiality Order"). *See, e.g., University of Pennsylvania v. EEOC*, 493 U.S. 182, 193-95 (1990). Indeed, Defendants have repeatedly availed themselves of this Confidentiality Order, having liberally designated documents and information produced as "Confidential."

discovery regarding investigation conducted by employer's attorney).[13] *See also In re Keeper of the Records, (Grand Jury Subpoena Addressed to XYZ Corporation),* 348 F.3d. 16, 24 (1st Cir. 2003) (when advice of counsel is relied upon as a defense, communications embodying the subject matter of that advice typically lose protection); *In re Grand Jury Investigation,* 437 Mass. 340, 354 (2002) (one cannot rely on internal investigation to defend one's actions and simultaneously block third parties from testing whether representations about such investigation are accurate).[14]

Here, McCarron challenges not only the results of the internal investigation but its course, e.g., how it was that he became the target after his diagnosis with sarcoma. Evidence regarding that is evidence of pretext. McCarron should be given full discovery of all information, including documents, constituting or related to Defendants' internal investigation, as there is no other evidence from which he may prove that the targeting of him was pretext for discrimination. *See, e.g., Federal Deposit Insurance Corporation,* 2004 WL 1474579, at *2 (despite attorney-client privilege and work product doctrine objections, discovery compelled where fairness required and party seeking discovery had no other legitimate alternative through which to obtain the information regarding a matter put at issue by opposing party).

B.  McCarron Has A Substantial Need For The Documents Concerning Defendants' Internal Investigation and/or Self-Assessment.

Even if there has been no waiver of the work-product protection, Defendants must be compelled to produce documents and tangible things constituting or related to their internal investigation because, pursuant to Fed. R. Civ. P. 26(b)(3)(A), such information is "otherwise discoverable" under Rule 26(b)(1). Given that it is all but impossible for McCarron to challenge his termination without access to the investigation upon which it is based, McCarron has demonstrated that he "has substantial need for the materials to prepare [his] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

---

[13] A copy of this decision is attached hereto as Exhibit E.

[14] Also, Defendants cannot claim attorney-client privilege as to every communications between their counsel and any one of their employees. *See Messing, Rudavsky & Weliky, P.C. v. President and Fellows of Harvard,* 436 Mass. 347, 358-59 (2003) (limiting presumption of such privilege to those whose statements can bind the employer or who have decision-making authority as to the litigation between the employer and the employee).

### III.   JPMSI MUST BE COMPELLED TO DESIGNATE WITNESSES, PRODUCE DOCUMENTS AND FULLY AND COMPLETELY ANSWER INTERROGATORIES REGARDING INFORMATION SHARED WITH THE SEC AND/OR NASD AND REGARDING THEIR INTERNAL INVESTIGATION.

Topics Nos. 2 – 6 from Schedule A to the Second Amended Notice of Deposition to JPMSI[15],

---

[15] **Topic No. 2**

Any investigation, review, analysis, search or inquiry undertaken by JPMSI or any other entity on its behalf in connection with the Subpoena ["Subpoena Investigation"], including without limitation the following:

a.   names, titles and a description of the involvement of any individuals who conducted the Subpoena Investigation;

b.   names, titles, and dates of individuals interviewed or otherwise questioned in connection with the Subpoena Investigation and/or the Subpoena;

c.   documents generated and/or prepared in connection with, or otherwise concerning, the Subpoena Investigation and/or the Subpoena;

d.   documents requested or received in connection with the Subpoena Investigation and/or the Subpoena;

e.   communications with the SEC and/or the NASD concerning the Subpoena Investigation and/or the Subpoena;

f.   conclusions and/or results of the Subpoena Investigation, and to whom such conclusions and/or results were communicated and when;

g.   consequences and/or recommendations to JPMSI concerning the Subpoena Investigation including without limitation warning and/or fines, and to whom such consequences and/or recommendations were communicated and when; and

h.   actions taken by JPMSI in connection with any conclusions, results and/or recommendations generated concerning the Subpoena Investigation and/or the Subpoena.

**Response No. 2**

JPMSI objects to Topic No. 2 on the grounds it is vague, overbroad, seeks confidential personnel or privileged information, and is not designed to elicit relevant information.

**Topic No. 3**

Any investigation, review, analysis, search or inquiry undertaken by JPMSI or any other entity on its behalf in connection with the "sweeping inquiry" [the "Sweeping Inquiry"] launched by the NASD as referenced in the Position Statement [the "Sweeping Inquiry Investigation"], including without limitation the following:

a.   names, titles and a description of the involvement of any individuals who conducted the Sweeping Inquiry Investigation;

b.   names, titles, and dates of individuals interviewed or otherwise questioned in connection with the Sweeping Inquiry Investigation and/or the Sweeping Inquiry;

c.   documents generated and/or prepared in connection with, or otherwise concerning, the Sweeping Inquiry Investigation and/or the Sweeping Inquiry;

d.   documents requested or received in connection with the Sweeping Inquiry Investigation and/or the Sweeping Inquiry;

e.   communications with the SEC and/or the NASD concerning the Sweeping Inquiry Investigation and/or the Sweeping Inquiry;

f.   conclusions and/or results of the Sweeping Inquiry Investigation, and to whom such conclusions and/or results were communicated and when;

g.   consequences and/or recommendations to JPMSI concerning the Sweeping Inquiry Investigation and/or the Sweeping Inquiry including without limitation warning and/or fines, and to whom such consequences and/or recommendations were communicated and when; and

h.   actions taken by JPMSI in connection with any conclusions, results and/or recommendations generated concerning Sweeping Inquiry Investigation and/or the Sweeping Inquiry.

**Response No. 3**

JPMSI objects to Topic No. 3 on the grounds it is vague, overbroad, seeks confidential personnel or privileged information, and is not designed to elicit relevant information.

**Topic No. 4**

Any actions taken by JPMSI and/or any of its affiliated entities in connection with the "self-assessment of … gift giving and entertainment practices" [the "Self-Assessment"] conducted by JPMSI and/or any of its affiliated entities as referenced in the Position Statement, including without limitation the following information:

a.   names, titles and a description of the involvement of any individuals who conducted or took action in connection with the Self-Assessment;

b.   names, titles and dates of individuals interviewed or otherwise questioned in connection with the Self-Assessment;

c.   documents generated and/or prepared in connection with, or otherwise concerning, the Self-Assessment;

Plaintiff's First Request for Production, Request Nos. 28 –33[16], and Plaintiff's First Set of Interrogatories,

---

d.  documents requested or received in connection with the Self-Assessment;
e.  communications with the SEC and/or the NASD concerning the Self-Assessment;
f.  conclusions and/or results of the Self-Assessment, and to whom such conclusions and/or results were communicated and when;
g.  consequences and/or recommendations to JPMSI concerning the Self-Assessment including without limitation warning and/or fines, and to whom such consequences and/or recommendations were communicated and when; and
h.  actions taken by JPMSI in connection with any conclusions, results and/or recommendations generated concerning the Self-Assessment.

**Response No. 4**
JPMSI objects to Topic No. 4 on the grounds it is vague, overbroad, seeks confidential personnel or privileged information, and is not designed to elicit relevant information.

**Topic No. 5**
Information regarding the scope of the Subpoena Investigation, the Sweeping Inquiry and/or the Self-Assessment, including without limitation whether JPMSI and/or JP Morgan Chase considered expanding the scope or nature of the Subpoena Investigation, the Sweeping Inquiry and/or the Self-Assessment and any decisions made regarding such potential expansion in scope or nature.

**Response No. 5**
JPMSI objects to Topic No. 5 to the extent it seeks privileged information.

**Topic No. 6**
Regarding the interviewing or questioning of any of the following individuals in connection with the Subpoena Investigation, the Sweeping Inquiry and/or the Self-Assessment, (i) the reasons for interviewing or such individual or the reasons why such individual was not interviewed or questioned; (ii) the nature and extent of the interviewing or questioning of such individual; and (iii) what was learned from interviewing or questioning such individual:
a. Matt Murphy; b. George Needham; c. Bob Donahue; d. Chris Pillsbury; e. Jeff Miller; f. Carl Lacey; g. Joe Faucher;  h. Mark Bianchi; i. Steve Burbage; j. Bill Monroe; k. Mike Deldicheto; l. Joe Swirbalus;          m. Jamie Carlson; n. Lenny Pascuci; o. Rich Whalen;    p. Chris Morrison; q. Diane Duncan; r. Eugene McCarron; s. John Beggans; t. Gary Koenig; u. Davide Visco; v. Tucker Radebaugh; w. Bryan Welch; and x. Miceal Chamberlain.

**Response No. 6**
JPMSI objects to Topic No. 6 to the extent it seeks privileged information.

[16] **Request No. 28**
Any and all documents produced or made available, in the form in which produced or made available, to the SEC and/or National Association of Securities Dealers ["NASD"] by JPMSI and/or JP Morgan Chase, or any affiliated entity, in connection with the Subpoena, with the "sweeping inquiry" launched by the NASD as referenced in the Position Statement [the "Sweeping Inquiry"], and/or with the "self-assessment of ... gift giving and entertainment practices" [the "Self-Assessment"] conducted by JPMSI and/or any of its affiliated entities as referenced in the Position Statement.

**Response No. 28**
Defendants object to the extent the request seeks documents which are privileged and/or attorney work product. Defendants further object on the grounds the request is overly broad, unduly burdensome, seeks confidential private and personnel information of employees other than Plaintiff and is not designed to elicit relevant information or evidence admissible at trial.

**Request No. 29**
Any and all documents concerning the Subpoena, the Sweeping Inquiry, and/or the Self-Assessment.

**Response No. 29**
Defendants object to the extent the request seeks documents which are privileged and/or attorney work product. Defendants further object on the grounds the request is overly broad, unduly burdensome, seeks confidential private and personnel information of employees other than Plaintiff and is not designed to elicit relevant information or evidence admissible at trial. Without waiving their objections, Defendants state that non-privileged responsive documents will be provided.

**Supplemental Response No. 29**
Defendants clarify their objection based on "privilege" as an objection to the extent the request seeks documents which are protected by the attorney-client privilege and/or constitute attorney work product.

**Request No. 30**
Any and all documents concerning any and all investigations by JPMSI and/or by JP Morgan Chase of the facts and/or circumstances relating to the claims in this litigation, the Subpoena, the Sweeping Inquiry and/or the Self-Assessment ["Investigations"].
**Response No. 30**
Defendants object to the extent the request seeks documents which are privileged and/or attorney work product. Defendants further object on the grounds the request is overly broad, unduly burdensome, seeks confidential private and personnel information of employees other than Plaintiff and is not designed to elicit relevant information or evidence admissible at trial. Without waiving their objections, Defendants state that non-privileged responsive documents will be provided.
**Supplemental Response No. 30**
Defendants clarify their objection based on "privilege" as an objection to the extent the request seeks documents which are protected by the attorney-client privilege and/or constitute attorney work product.

**Request No. 31**
Any and all documents concerning the scope of Investigations, including expansion beyond, or limitation to, the Boston office.
**Response No. 31**
Defendants object to the extent the request seeks documents which are privileged and/or attorney work product. Defendants further object on the grounds the request is vague, overly broad, unduly burdensome, seeks confidential private and personnel information of employees other than Plaintiff, not limited to a relevant time period, and is not designed to elicit relevant information or evidence admissible at trial. Without waiving their objections, Defendants state that non-privileged responsive documents will be provided.
**Supplemental Response No. 31**
Defendants clarify their objection based on "privilege" as an objection to the extent the request seeks documents which are protected by the attorney-client privilege and/or constitute attorney work product.
**Request No. 32**
Any and all communications concerning Plaintiff: a. between JPMSI and the SEC; b. between JP Morgan Chase and the SEC; c. between JPMSI and the NASD; and d. between JP Morgan Chase and the NASD.
**Response No. 32**
Defendants object to the extent the request seeks documents which are privileged and/or attorney work product. Defendants further object on the grounds the request is overly broad, unduly burdensome, seeks confidential private and personnel information of employees other than Plaintiff and is not designed to elicit relevant information or evidence admissible at trial.
**Supplemental Response No. 32**
Defendants clarify their objection based on "privilege" as an objection to the extent the request seeks documents which are protected by the attorney-client privilege and/or constitute attorney work product.

**Request No. 33**
Any and all communications concerning gift-giving by and/or entertainment practices of JPMSI employees: a. between JPMSI and the SEC; b. between JPMSI and the NASD; c. internally at JPMSI; d. between JPMSI and JP Morgan Chase; and e. between JPMSI and any of its affiliated organizations.
**Response No. 33**
Defendants object to the extent the request seeks documents which are privileged and/or attorney work product. Defendants further object on the grounds the request is overly broad, unduly burdensome, seeks confidential private and personnel information of employees other than Plaintiff and is not designed to elicit relevant information or evidence admissible at trial.
**Supplemental Response No. 33**
Defendants clarify their objection based on "privilege" as an objection to the extent the request seeks documents which are protected by the attorney-client privilege and/or constitute attorney work product. Without waiving their objections, Defendants state that non-privileged responsive documents located to date will be produced.

Nos. 6 – 8[17], all seek testimony, documents and information, respectively (collectively, "Information"), in

---

[17] **Interrogatory No. 6**

Please identify any investigation, review, analysis, search or inquiry undertaken by JPMSI or any other entity on its behalf in connection with the Subpoena ["Subpoena Investigation"], including without limitation providing the following information:

a.   names, titles and a description of the involvement of any individuals who conducted the Subpoena Investigation;
b.   names and titles of individuals interviewed or otherwise questioned in connection with the Subpoena Investigation and/or the Subpoena;
c.   identify any documents generated and/or prepared in connection with, or otherwise concerning, the Subpoena Investigation and/or the Subpoena;
d.   identify any documents requested or received in connection with the Subpoena Investigation and/or the Subpoena;
e.   identify any communications with the Securities and Exchange Commission ["SEC"] and/or the National Association of Securities Dealers ["NASD"] concerning the Subpoena Investigation and/or the Subpoena;
f.   describe in detail any conclusions and/or results of the Subpoena Investigation, and identify to whom such conclusions and/or results were communicated and when;
g.   describe in detail any consequences and/or recommendations to JPMSI concerning the Subpoena Investigation including but not limited to warning and/or fines, and identify to whom such consequences and/or recommendations were communicated and when; and
h.   describe in detail any actions taken by JPMSI in connection with any conclusions, results and/or recommendations generated concerning the Subpoena Investigation and/or the Subpoena.

**Answer No. 6**
JPMSI objects to Interrogatory No. 6 on the grounds that it is vague, overly broad, unduly burdensome, and not designed to elicit relevant information or evidence admissible at trial. JPMSI further objects to Interrogatory No. 6 on the grounds that it seeks privileged information protected by the work product doctrine and the attorney-client privilege. Without waiving its objections, JPMSI states that following an investigation of its Boston office in 2004 and 2005 it concluded that Plaintiff had violated NASD Rule 3060 and JPMSI's internal rules regarding gift giving, other employees in JPMSI's Boston office reporting to Plaintiff had violated NASD Rule 3060 and JPMSI's internal rules regarding gift giving, and Plaintiff had failed to properly supervise the employees who reported to him regarding their expense reporting and gift giving practices. Further responding, JPMSI states that following the investigation, Plaintiff's employment was terminated and three employees, who reported to Plaintiff, Davide Visco, Gary Koenig, and Bryan Welch, were given written warnings by JPSMI. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff is directed to documents being produced.
**Supplemental Answer No. 6**
Without waiving its objections, JPMSI provides the following response to subparts (a) – (f) of Interrogatory No. 6:
(a)      At least the following were involved in the Subpoena Investigation: Lilly Farahnakian, former Vice President and Assistant General Counsel; Gerard C. Mayer, Vice President/Corporate Investigations; Lorraine Chan, former Vice President in the Audit Department; and Scott Campbell, Senior Vice President, Associate General Counsel.
(b)      At least the following were interviewed during the Subpoena Investigation: Davide Visco, John Beggans, John Glynn, Bryan Welch, James T. Radebaugh, Graham Barrett, Eugene McCarron and Gary Koenig.
(c) – (f)  Pursuant to Fed. R. Civ. P. 33(d), Plaintiff is directed to certain correspondence being produced to Plaintiff between documents at Bates Nos. DEF03035 – DEF03115.

**Interrogatory No. 7**
Please identify any investigation, review, analysis, search or inquiry undertaken by JPMSI or any other entity on its behalf in connection with the "sweeping inquiry" [the "Sweeping Inquiry"] launched by the NASD as referenced in the Position Statement [the "Sweeping Inquiry Investigation"], including without limitation providing the following information:
a.   names, titles and a description of the involvement of any individuals who conducted the Sweeping Inquiry Investigation;
b.   names and titles of individuals interviewed or otherwise questioned in connection with the Sweeping Inquiry Investigation and/or the Sweeping Inquiry;
c.   identify any documents generated and/or prepared in connection with, or otherwise concerning, the Sweeping Inquiry Investigation and/or the Sweeping Inquiry;
d.   identify any documents requested or received in connection with the Sweeping Inquiry Investigation and/or the Sweeping Inquiry;
e.   identify any communications with the SEC and/or the NASD concerning the Sweeping Inquiry Investigation and/or the Sweeping Inquiry;
f.   describe in detail any conclusions and/or results of the Sweeping Inquiry Investigation, and identify to whom such conclusions and/or results were communicated and when;

g.  describe in detail any consequences and/or recommendations to JPMSI concerning the Sweeping Inquiry Investigation and/or the Sweeping Inquiry including but not limited to warning and/or fines, and identify to whom such consequences and/or recommendations were communicated and when; and

h.  describe in detail any actions taken by JPMSI in connection with any conclusions, results and/or recommendations generated concerning Sweeping Inquiry Investigation and/or the Sweeping Inquiry.

**Answer No. 7**

JPMSI objects to Interrogatory No. 7 on the grounds that it is vague, overly broad, unduly burdensome, and not designed to elicit relevant information or evidence admissible at trial. JPMSI further objects to Interrogatory No. 7 on the grounds that it seeks privileged information protected by the work product doctrine and the attorney-client privilege. Without waiving its objections, JPMSI states that following an investigation of its Boston office in 2004 and 2005 it concluded that Plaintiff had violated NASD Rule 3060 and JMPSI's internal rules regarding gift giving, other employees in JPMSI's Boston office reporting to Plaintiff had violated NASD Rule 3060 and JPMSI's internal rules regarding gift giving, and Plaintiff had failed to properly supervise the employees who reported to him regarding their expense reporting and gift giving practices. Further responding, JPMSI states that following the investigation, Plaintiff's employment was terminated and three employees, who reported to Plaintiff, Davide Visco, Gary Koenig, and Bryan Welch, were given written warnings by JPMSI. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff is directed to documents being produced.

**Supplemental Answer No. 7**

Without waiving its objections, JPMSI states that it lacks sufficient knowledge or information to respond to Interrogatory No. 7 to the extent it seeks information that is in the control of NASD. Further responding, JPMSI identifies the following NASD employees who are identified in correspondence to it from the NASD regarding the Sweeping Inquiry: Eileen Morris, Steven B. Price, Chris Neidlinger, Chris LaVasseur, and Michael Hegemon. Responding still further, JPMSI refers Plaintiff to JPMSI's answers to subparts (c) – (h) of Interrogatory No. 8 for the information sought by Plaintiff in subparts (c) – (h) of Interrogatory No. 7, as the NASD performed the Sweeping Inquiry and JPMSI performed the Self-Assessment. To the extent JPMSI can identify or describe the requested information, such identification or description can be found in its answers to subparts (c) – (h) of Interrogatory No. 8.

**Interrogatory No. 8**

Please identify all actions taken by JPMSI and/or any of its affiliated entities in connection with the "self-assessment of … gift giving and entertainment practices" [the "Self-Assessment"] conducted by JPMSI and/or any of its affiliated entities as referenced in the Position Statement, including without limitation providing the following information:

a.  names, titles and a description of the involvement of any individuals who conducted or took action in connection with the Self-Assessment;

b.  names and titles of individuals interviewed or otherwise questioned in connection with the Self-Assessment;

c.  identify any documents generated and/or prepared in connection with, or otherwise concerning, the Self-Assessment;

d.  identify any documents requested or received in connection with the Self-Assessment;

e.  identify any communications with the SEC and/or the NASD concerning the Self-Assessment;

f.  describe in detail any conclusions and/or results of the Self-Assessment, and identify to whom such conclusions and/or results were communicated and when;

g.  describe in detail any consequences and/or recommendations to JPMSI concerning the Self-Assessment including but not limited to warning and/or fines, and identify to whom such consequences and/or recommendations were communicated and when; and

h.  describe in detail any actions taken by JPMSI in connection with any conclusions, results and/or recommendations generated concerning the Self-Assessment.

**Answer No. 8**

JPMSI objects to Interrogatory No. 8 on the grounds that it is vague, overly broad, unduly burdensome, and not designed to elicit relevant information or evidence admissible at trial. JPMSI further objects to Interrogatory No. 8 on the grounds that it seeks privileged information protected by the work product doctrine and the attorney-client privilege. Without waiving its objections, JPMSI states that following an investigation of its Boston office in 2004 and 2005 it concluded that Plaintiff had violated NASD Rule 3060 and JPMSI's internal rules regarding gift giving, other employees in JPMSI's Boston office reporting to Plaintiff had violated NASD Rule 30-60 and JPMSI's internal rules regarding gift giving, and Plaintiff had failed to properly supervise the employees who reported to him regarding their expense reporting and gift giving practices. Further responding, JPMSI states that following the investigation, Plaintiff's employment was terminated and three employees, who reported to Plaintiff, Davide Visco, Gary Koenig, and Bryan Welch, were given written warnings by JPMSI. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff is directed to documents being produced.

**Supplemental Answer No. 8**

Without waiving its objections, JPMSI provides the following response to subparts (a) – (h) of Interrogatory No. 8:

connection with JPMSI's Subpoena Investigation (stemming from its receipt of the SEC Subpoena), its

investigation pursuant to the Sweeping Inquiry directive by the NASD, and its Self-Assessment. As set

forth above, Information relating to these topics is relevant, material and not protected by any privilege.

Specifically, the Information is relevant and necessary to McCarron's demonstration that the reasons cited

by Defendants for his termination (which allegedly stem from information learned during the course of the

Subpoena Investigation, Sweeping Inquiry and Self-Assessment) were pretext for age and/or disability

discrimination. McCarron also requires the Information to perform his own analysis of the records

reviewed by Defendants during these investigations with respect to his non-disabled, younger colleagues

to determine whether and to what extent that Defendants (i) targeted McCarron; (ii) failed to perform a

reasonable and comprehensive investigation; and (iii) effected disparate discipline despite activities similar

to or worse than those alleged to have been engaged in by McCarron.

As an initial matter, Defendants have utterly failed to comply with Fed. R. Civ. P. 34(b)(2)(E)(i),

which requires them to "produce documents as they are kept in the usual course of business or . . . [to]

organize and label them to correspond to the categories in the request. As a consequence of Defendants'

failure to comply with Rule 34 regarding the form of the production, it is virtually impossible for

McCarron to ascertain whether and to what extent attachments to a particular document were produced at

a different point in the production. Any further production by Defendants pursuant to the instant Motion,

and McCarron's other Motions filed contemporaneously herewith, should be made consistent with the

express requirements of the Rule.

---

(a) At least the following were involved in the Self-Assessment: Richard Burger, Vice President in Compliance; Lilly Farahnakian, former Vice President and Assistant General Counsel; Beth Swartz, Vice President in the Internal Audit Department; Christopher Franke, former Managing Director, Compliance Managing Director and Associate General Counsel; Julio Acevedo, Executive Director, Head of Compliance Audit; Christina Peri, Vice President, Audit Partner; Jennifer Dockendorf, Vice President, Compliance Manager; and Taj Akin-Olugbade, Associate, Senior Compliance Officer.
(b) – (h)  Defendants are presently reviewing recently located documents in an effort to respond more fully to subparts (b) – (h).
(h) As noted above, Defendants are presently reviewing recently located documents in an effort to respond more fully to subpart (h), however, subject to further clarification upon the completion of such review, JPMSI states that it instituted a general ban on gift giving with limited exceptions.

Moreover, as set forth above, though Defendants have produced certain selective Information, their production is more notable for what is missing. For example, while Defendants have produced copies of certain letters between and among the SEC, NASD and Defendants, they have failed to produce all correspondence among these parties generated in connection with the investigations; failed to produce attachments and/or documents referenced in the correspondence they did produce; and failed to produce correspondence to which the letters produced allegedly respond. Specific examples include the following:

- Defendants produced their March 31, 2005 letter to the NASD (Bates Numbers DEF 03044 - DEF 03053)[18], but have failed to produce the following documents referenced in the March 31 letter: (i) travel and business related "data produced on CD on January 31, 2005 . . . [and] reproduced on February 16, 2005"; (ii) a January 31, 2005 e-mail and a spreadsheet attached thereto; (iii) print-outs of the ePayDirect reports and copies of all associated documentation that had been requested, as well as documentation requested from individual employees; (iv) a document that had been attached to the March 31 letter when sent to the NASD that describes Defendants' methodology for arriving at its "final sample" of one-hundred and forty (140) travel and business related expenses; (v) a March 23, 2005 e-mail and data allegedly produced with that e-mail; (vi) previously produced spreadsheets; (vii) a December 24, 2004 e-mail; and (viii) attachments to the March 31 letter concerning Defendants' policies and procedures.

- While Defendants produced a letter dated June 9, 2005 addressed to the SEC (Bates Numbered DEF 03058), they failed to produce a letter referenced therein, dated February 2, 2005 and addressed to the SEC. Moreover, although Defendants produced to Plaintiff the documents referenced in the June 9, 2005 letter (numbered 00150 – 01809), they failed to produce them in the form ultimately provided to the SEC – on a cd-rom, which Defendants acknowledge permitted the SEC to "run word searches on the documents."

- Although Defendants produced an e-mail to the NASD dated January 20, 2006, they failed to produce the referenced NASD's December 20, 2005 note and/or e-mail, to which Defendants were responding, and the corresponding spreadsheet from the NASD (purportedly attached to the missing December 20 note).

Defendants must not be permitted to cherry-pick the documents produced (or the form in which they are produced), particularly in the face of their use of the results of the Subpoena Investigation, the Sweeping Inquiry and/or the Self-Assessment as their defense to McCarron's claims. Defendants must be required to produce documents, answer interrogatories and designate witnesses regarding all information

---

[18] A copy of the March 31, 2005 letter has been attached as Exhibit A to Plaintiff's Memorandum In Support Of His Motion To Compel Documents From Which He May Prove Employment Discrimination and filed under seal consistent with the Confidentiality Order.

shared with the SEC and/or NASD including, as requested in Request No. 33, all communications

between or among the SEC, NASD and/or Defendants.[19]

Similarly, Defendants must be compelled to produce documents, information and testimony

concerning the Self-Assessment and other aspects of their internal investigations, the results of which they

claim formed the basis for their decision to terminate McCarron's employment. *See* Position Statement,

pp. 2-3 (attached as Exhibit A); Hightower Letter, pp. 4-5 (Attached as Exhibit B). Defendants cannot, as

they seek to here, "have their cake and eat it too." *See Fultz*, 1995 WL 76874, at *2; *In re Grand Jury

Investigation,* 437 Mass. at 354 (a party cannot "rely on an internal investigation to assert the propriety of

its actions to third parties and simultaneously expect to block third parties from testing whether its

representations about the internal investigation are accurate").

## IV.   DEFENDANTS MUST BE REQUIRED TO PRODUCE DOCUMENTS RESPONSIVE TO REQUEST FOR PRODUCTION NO. 38.

Request No. 38[20] seeks the production of any and all documents concerning McCarron's alleged

violations of NASD Rule 3060 and/or JPMSI's internal rules on gift-giving. Defendants object to this

Request on various grounds, but agree to produce "non-privileged responsive documents." However,

given that Defendants have interposed, as their defense to McCarron's claims (and as rationale for his

termination), that McCarron committed violations (allegedly ascertained as a consequence of the

---

[19] Request for Production No. 33, as narrowed, requests communications for the period January 2002 through December 2007 "concerning gift-giving by and/or entertainment practices of JPMSI employees (a) between JPMSI and the SEC; (b) between JPMSI and the NASD; (c) from, to or between Managing Directors internally at JPMSI; (d) from, to or between Managing Directors at JPMSI and JP Morgan Chase; and (e) from, to or between Managing Directors at JPMSI and any of its affiliated organizations." While this request does not limit the communications requested to those specific to the Subpoena Investigation, Sweeping Inquiry or Self-Assessment, the requested documents are related to Defendants' internal investigation and relevant to Plaintiff's ability to demonstrate that he was treated differently than similarly situated colleagues and that Defendants' alleged reasons for his termination were pretext for age and/or disability discrimination.
[20] Request No. 38
Any and all documents concerning Plaintiff's alleged violations of NASD Rule 3060 and/or JPMSI's internal rules on gift-giving.
Response No. 38
Defendants object to the extent the request seeks documents which are privileged and/or attorney work product. Defendants further object on the grounds the request is overly broad, unduly burdensome, seeks confidential personnel information of employees other than Plaintiff and is not designed to elicit relevant information or evidence admissible at trial. Without waiving their objections, Defendants state that non-privileged responsive documents will be provided.

Subpoena Investigation, the Sweeping Inquiry and/or the Self-Assessment)of NASD Rule 3060 and/or

JPMSI's internal rules on gift-giving, Defendants must be compelled to produce all documents responsive

to this Request.

## V.   DEFENDANTS MUST BE COMPELLED TO PRODUCE DOCUMENTS IN CONNECTION WITH THEIR POSITION STATEMENT AND THE HIGHTOWER LETTER.

Defendants must be compelled to produce documents responsive to Request for Production Nos.

43, 44 and 46, concerning allegations made in their Position Statement and the Hightower Letter, both

filed with the MCAD in their defense of McCarron's claims.[21]   Any claim of privilege with respect to

---

[21] **Request No. 43**
Any and all documents concerning the following, as referenced in the Position Statement:
a.   the "NASD rules regarding gift giving and entertainment";
b.   gifts given by JPMSI employees to employees of Fidelity Investments;
c.   an interview of Plaintiff in February 2005;
d.   "Complainant told counsel that the Boston Equity Sales group was in compliance with NASD rules regarding gift giving and entertainment";
e.   "documents [that] were collected" as alleged on page 2, Section C, of the Position Statement;
f.   "Complainant himself gave an employee of Fidelity Super Bowl tickets for which he paid over $9,000";
g.   "the veracity of Complainant's statements came into doubt;"
h.   "the Equity Sales department in the Boston office was rife with misreporting of expenses charged to JPMSI";
i.   concerning "internal interviews" conducted by JPMSI of Plaintiff;
j.   "Complainant began to sense that the investigation was coming to a close and that he might be terminated for his misconduct";
k.   concerning a conversation between Todd Gutfleisch and Sarah Walters on October 13, 2005, including without limitation documents concerning the allegation that during that conversation, Ms. Walters "expressed concern on behalf of Complainant that some action would be taken against him and that he wanted a further opportunity to be heard . . . ."
l.   "the decision to terminate Complainant's employment and discipline several members of his staff was actually made in early October by Carlos Hernandez";
m.   "Complainant was terminated from JPMSI due to (1) his own misconduct and violation of NASD rules, and (2) permitting the office in which he was in charge to violate NASD rules";
n.   "Mr. Hernandez . . . wanted to advise Complainant in person and due to a hectic travel schedule, he was unable to meet with Complainant for two weeks following this decision";
o.   "Mr. Hernandez intended to terminate Complainant during that conversation";
p.   "JPMSI practice in terminating employees on leave, however, was to permit an employee to complete their leave of absence and terminate upon their return";
q.   "Complainant was well aware of his impending termination upon his return from his leave of absence";
r.   concerning a conversation between Carlos Hernandez and Plaintiff on October 24, 2005;
s.   "on October 24 [Complainant] spoke to Mr. Hernandez by telephone and expressed dismay at the termination decision . . . .";
t.   "several members of [Plaintiff's] staff" were disciplined and concerning the decision to discipline those staff members;
u.   with respect to the employer's completion of a Form U-5, "[t]he termination need not be of employment; it only needs to be of termination of registration with the firm that is sponsoring the registered representative"; and
v.   Plaintiff "was terminated as a registered representative of JPMSI on October 20, 2005" rather than as an employee of JPMSI.
**Response No. 43**
Defendants object on the grounds the request is overly broad, unduly burdensome, seeks confidential private and personnel information of employees other than Plaintiff and is not designed to elicit relevant information or evidence admissible at trial.

Defendant's further object to the extent the request seeks the production of documents that are privileged and/or attorney work product. Without waiving their objections, Defendants state that non-privileged responsive documents will be provided.

**Supplemental Response No. 43**
Defendants clarify their objection based on "privilege" as an objection to the extent the request seeks documents which are protected by the attorney-client privilege and/or constitute attorney work product.

**Request No. 44**
Any and all documents concerning the following, as referenced in the letter dated December 7, 2005 from Todd Gutfleisch attached to the Position Statement:
a.  that "Mr. McCarron's termination was the result of . . . his failure as a manager to appropriately control the gift and expense issues in the Boston office he was in charge of . . . .";
b.  "the allegations raised by Mr. McCarron into misconduct by JPMSI employees"; and
c.  that Mr. McCarron refused "to provide details or names in most instances," and including without limitation documents concerning information provided by Plaintiff in connection with the referenced investigation.

**Response No. 44**
Defendants object on the grounds the request is overly broad, unduly burdensome, seeks confidential personnel information of employees other than Plaintiff and is not designed to elicit relevant information or evidence admissible at trial. Defendants further object to the extent the request seeks the production of documents that are privileged and/or attorney work product. Without waiving their objections, Defendants state that non-privileged responsive documents will be provided.

**Supplemental Response No. 44**
Defendants clarify their objection based on "privilege" as an objection to the extent the request seeks documents which are protected by the attorney-client privilege and/or constitute attorney work product.

**Request No. 46**
Any and all documents concerning the following, as referenced in the Hightower Letter:
a.  "Complainant was accommodated (informally) during this period of time";
b.  Plaintiff made "[a]n informal request in May 2005 for an accommodation to recuperate following surgery";
c.  "[b]y the time Complainant's October 2005 request was made, the decision to terminate his employment had been made and the 'accommodation' ended up being his continued employment in an inactive status (and benefits eligible) until his return from leave, at which time he was formally terminated";
d.  "Mr. Harrington immediately advised his manager, Carlos Hernandez of Complainant's cancer and impending surgery";
e.  "[a]t Complainant's request, Mr. Hernandez was able to quickly get Complainant an appointment with a leading cancer specialist at Sloan Kettering";
f.  "the Boston Equities office of JPMSI is the branch office that dealt with Fidelity";
g.  the meetings between Complainant and JMPSI lawyers;
h.  concerning the "responsive documents" provided to the SEC;
i.  concerning the telephone calls between Complainant and JPMSI lawyers;
j.  concerning meetings between JPMSI lawyers and the "numerous other employees in the Boston office, including many employees who reported to Complainant";
k.  "[m]any employees in the Boston office reporting to Complainant gave gifts in violation of NASD Rule 3060";
l.  "Complainant himself gave gifts in violation of NASD Rule 3060";
m.  "JPMSI took action against those that violated NASD Rule 3060 and its internal rules";
n.  concerning JPMSI's "internal rules" regarding gift-giving;
o.  "[s]everal employees were issued written warnings and their bonuses were slashed as a result of their failure to comply with rules," including without limitation personnel records (as defined by M.G.L. c. 249, § 52C) or anyone issued a warning or who had his/her bonus slashed, and documents evidencing the expected bonus (prior to the decision to "slash"), the slashed bonus and the decisions to issue warnings and/or slash bonuses;
p.  "Complainant . . . ran the office . . .";
q.  "Complainant . . . failed to supervise by permitting . . . gift giving . . .";
r.  "Complainant . . . failed to supervise by . . . encouraging gift giving . . ."; and
s.  the Super Bowl tickets were only "one example of Complainant's gift giving."

**Response No. 46**
Defendants object on the grounds the request is overly broad, unduly burdensome, seeks confidential private and personnel information of employees other than Plaintiff and is not designed to elicit relevant information or evidence admissible at trial. Defendants further object to the request to the extent it seeks information protected from production by the attorney-client privilege and/or work product doctrine. Without waiving their objections, Defendants state that non-privileged responsive documents will be provided.

these documents has plainly been waived, since Defendants placed the allegations contained in these documents "at issue" in the litigation. *See, e.g., Federal Deposit Insurance Corporation*, 2004 WL 1474579, at *2.

## VI.   DEFENDANTS MUST BE COMPELLED TO PRODUCE CERTAIN DOCUMENTS SET FORTH ON THEIR PRIVILEGE LOG.

Certain documents on Defendants' limited (and, admittedly, incomplete) Privilege Log must be produced.[22] In particular, item numbers 1 – 9, 11, 13, 19, 23, 25, 26 and 28 must be produced for the reasons set forth below.

- Item No. 1, which is described as "[c]orrespondence from Glen McFarlane to Lilly Farahnakian concerning investigation in response to SEC Subpoena" and is identified as protected by both the attorney-client privilege and work-product privilege, must be produced. Ms. Farahnakian is Defendants' in-house counsel; Glen McFarlane has been identified by Defendants as the "Executive Director, Technology Program Senior Director." Presumably, the correspondence at issue (dated January 28, 2005) related to Defendants' internal investigation in response to the SEC Subpoena (dated November 24, 2004), the results of which Defendants rely on in defense of McCarron's claims. As a result, any claimed privilege, to the extent it once existed, has been waived and the correspondence must be produced.

- Item Nos. 2 – 4, 6 – 7, 11, 13, 19, 23, 25, 26 and 28 are communications, notes and memoranda which constitute or relate to the investigations placed at issue by Defendants in this litigation, and have therefore lost any privileged protection.

- Item No. 5, which is described as "[c]orrespondence from George Needham to Lilly Farahnakian concerning NASD inquiry" and is identified as protected by the attorney-client privilege, must be produced. At the time of the correspondence (stated to be May 10, 2005), the Subpoena Investigation, Sweeping Inquiry and Self-Assessment were all in full-swing. At this time, Mr. Needham was a Vice-President and Sales Trader in the Boston office. Given that, at that time, Mr. Needham's practices were also being reviewed, he and Defendants plainly had no "identity of interests" and, therefore, Defendants' assertion of privilege cannot be sustained. *See, e.g., Abramian v. President & Fellows of Harvard College,* No. 935968C, 2001 WL 1771985, at *2 (Mass. Super. Dec. 4, 2001).[23] Moreover, even if a privilege existed, such privilege was waived when Defendants placed their investigations at issue in this case.

- Item Nos. 8 and 9, identified as e-mails dated October 17 and October 18, 2005, must be produced. These e-mails, between Todd Gutfleisch (in-house counsel for Defendants) and Lilly Farahnakian, and between Roxanne Doria (human resources for Defendants) and Todd Gutfleisch, respectively, likely contain important information regarding Defendants' decision to terminate McCarron's employment, as they were sent during the period just preceding the date when Defendants assert they intended to terminate him – October 20, 2005. As Defendants have put their "plan" to terminate McCarron's

---

[22] A copy of the Privilege Log is attached hereto and incorporated herein as Exhibit F.
[23] A copy of this decision is attached hereto as Exhibit G.

employment on October 20, 2005 "at issue" (*see* Position Statement, pp. 3-4), these documents must be produced.

<div align="center">Conclusion</div>

For the reasons set forth above, this Court should allow Plaintiff's Motion to Compel

Defendants to Produce Discovery Regarding (A) Information Shared with the SEC and/or the

NASD; and (B) Defendants' Internal Investigations.

<div style="margin-left:40%">

Respectfully submitted,
EUGENE H. MCCARRON,
By his attorneys,


/s/ Nancy S. Shilepsky
James E. O'Connell, Jr., BBO# 376475
Nancy S. Shilepsky BBO# 459080
Jennifer A. Yelen, BBO# 565205
Jonathan B. Engel, BBO # 664518
SHILEPSKY O'CONNELL CASEY
HARTLEY MICHON YELEN LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
(617) 723-8000
</div>

Dated:  June 5, 2008

<div align="center">**CERTIFICATE OF SERVICE**</div>

I, Jonathan B. Engel, counsel for the Plaintiff, hereby certify that on the date first-above written, a true copy of the foregoing document was filed electronically with the US District Court, District of Massachusetts, and served upon all attorneys of record in this matter by the ECF electronic notification system.

Jonathan B. Engel